IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**PINEVILLE FURNITURE & APPLIANCE COMPANY, INC.,**
Employer Below, Petitioner

**v.) No. 25-ICA-34**          (JCN: 2016018668)

**GLEN LAXTON,**
Claimant Below, Respondent

**FILED**
**August 6, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

Petitioner Pineville Furniture & Appliance Company, Inc., ("Furniture") appeals the December 19, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Glen Laxton filed a response.[1] Furniture did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which granted Mr. Laxton an 8% permanent partial disability ("PPD") award, and instead granted him an additional 4% award for a total PPD award of 12%.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Laxton filed a workers' compensation claim for an occupational injury that occurred on January 19, 2016.[2] On February 10, 2016, Mr. Laxton underwent an MRI of his lumbar spine, revealing a small right lateral disc protrusion partially compressing the right L5 nerve root, degenerative annular bulging at L3-L4 without stenosis, and a small midline disc protrusion without stenosis at L4-L5. A thoracic MRI also performed on February 10, 2016, revealed minimal scoliosis and mild multilevel degenerative disc disease.

---

[1] Furniture is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq. Mr. Laxton is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq.

[2] The Board noted that this claim was held compensable, but that the order(s) identifying the compensable condition(s) in this claim were not included in the lower record. An undated claim administrator order authorizing a microdiscectomy at L5-S1 and postoperative physical therapy was included in the lower record.

1

On April 9, 2019, Mr. Laxton underwent a second lumbar MRI revealing central spinal canal narrowing at L3-L4 and L4-L5, an asymmetric disc bulge with focal protrusion at L5-S1 that was slightly touching the right anterior thecal sac with narrowing of the right lateral recess and right neural foramen, and mild facet joint hypertrophy at L4-L5 and L5-S1. A third lumbar MRI performed on December 2, 2021, revealed congenital lumbar canal narrowing at L3-L5, a predominantly right-sided disc bulge at L5-S1 with moderate right lateral recess stenosis, facet hypertrophy and a diffuse disc bulge causing moderate canal stenosis and severe bilateral recess stenosis at L4-L5, facet hypertrophy and a diffuse disc bulge causing moderate canal stenosis and severe bilateral foraminal stenosis at L3-L4, facet hypertrophy and a shallow disc bulge at L2-L3, and a shallow right-sided disc protrusion at T12-L1.

On September 12, 2023, Dr. David Soulsby evaluated Mr. Laxton. Dr. Soulsby assessed an L5-S1 disc herniation, lumbar spondylosis, degenerative disc disease, and osteoarthritis of the right hip. Dr. Soulsby opined that only the disc herniation was causally related to Mr. Laxton's compensable injury. Dr. Soulsby found Mr. Laxton to be at maximum medical improvement ("MMI"). Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("*Guides*") and West Virginia Code of State Rules § 85-20 ("Rule 20"), Dr. Soulsby found Mr. Laxton to have 10% whole person impairment ("WPI") under Table 75 of the *Guides*, 10% WPI for range of motion abnormalities of the lumbar spine, and 3% WPI for sensory deficits. Applying Rule 20, Dr. Soulsby placed Mr. Laxton in Lumbar Category III of Table 85-20-C and adjusted Mr. Laxton's rating to 13% WPI. Based upon imaging evidence of pre-existing degenerative disc disease, Dr. Soulsby apportioned 5% of Mr. Laxton's WPI to a preexisting lumbar condition.

The claim administrator issued an order dated November 26, 2023, granting Mr. Laxton an 8% PPD award based on Dr. Soulsby's report. Mr. Laxton protested this order.

On January 8, 2024, Bruce Guberman, M.D., evaluated Mr. Laxton's compensable injury. Dr. Guberman noted that Mr. Laxton sustained an injury to his back when he slipped and fell at work on January 19, 2016. Dr. Guberman found Mr. Laxton to be at MMI, and he evaluated Mr. Laxton's WPI using the *Guides* and Rule 20. Dr. Guberman found Mr. Laxton to have 10% WPI under Table 75 of the *Guides*, 8% WPI for range of motion abnormalities, and 1% WPI for sensory deficits. Applying Rule 20, Dr. Guberman placed Mr. Laxton in Lumbar Category III of Table 85-20-C and adjusted Mr. Laxton's rating to 13% WPI. Like Dr. Soulsby, Dr. Guberman believed apportionment was appropriate. According to Dr. Guberman, 3% impairment of the 13% impairment is attributable to range of motion restrictions. Dr. Guberman found that 1.5% impairment of the 3% range of motion impairment should be apportioned. He rounded the apportionment down to a 1% impairment. As a result, Dr. Guberman believed Mr. Laxton has a 12% impairment from

2

the compensable injury. He noted that Mr. Laxton had no prior lumbar symptoms or injuries.

Mr. Laxton underwent an EMG report of his lower extremities on January 9, 2024, revealing electrophysiologic evidence of a chronic right L5-S1 radiculopathy. On December 19, 2024, the Board reversed the claim administrator's order granting Mr. Laxton an 8% PPD award and granted him an additional 4% PPD, for a total of a 12% PPD award. The Board found that both physicians were equally persuasive, and thus, adopted Dr. Guberman's report as it was the most consistent with Mr. Laxton's position under W. Va. Code § 23-4-1g. Furniture now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

Furniture argues that Dr. Guberman did not adequately explain his decision to apportion, thus, making his findings "arbitrary." Further, Furniture argues that Dr. Guberman used a method of apportionment that the Supreme Court of Appeals of West Virginia ("SCAWV") found to be invalid in *SWVA, Inc., v. Birch*, 237 W. Va. 393, 787 S.E.2d 664 (2016). We disagree.

In *Duff*, the SCAWV held that:

> Under West Virginia Code § 23-4-9b (2003), the employer has the burden of proving apportionment is warranted in a workers' compensation case. This

3

requires the employer to prove the claimant 'has a definitely ascertainable impairment resulting from' a preexisting condition(s). This requires that the employer prove that the preexisting condition(s) contributed to the claimant's overall impairment after the compensable injury and prove the degree of impairment attributable to the claimant's preexisting condition(s).

*Duff* at syl. pt. 6.

In *Birch*, the SCAWV held that:

In fixing the amount of a permanent partial disability award for a compensable injury suffered by a workers' compensation claimant who has a noncompensable preexisting definitely ascertainable impairment, the correct methodology pursuant to W. Va. Code § 23–4–9b (2003) is to deduct the impairment attributed to the preexisting injury from the final whole person impairment rating as determined under West Virginia Code of State Rules § 85-20.

*Birch* at syl. pt. 3.

Here, the Board determined that:

both doctors apportioned for preexisting impairment, and both doctors used the Rule 20 Spinal Tables to support their respective apportionment findings as required by *Duff*. Therefore, based upon the evidence of record, it cannot be found that one doctor's impairment findings are more or less reliable than that of the other. Accordingly, an equal amount of evidentiary weight exists regarding the claimant's impairment in this claim, and pursuant to W.Va. Code § 23-4-1g, the claim must be resolved in a manner that is most consistent with the claimant's position. The resolution most consistent with the claimant's position requires the adoption of Dr. Guberman's recommendation of 12% whole person impairment. Therefore, the order of November 26, 2023, must be reversed, and the claimant granted an additional 4% PPD above and beyond the 8% PPD previously granted.

Upon review, we note that both medical examiners believe apportionment is appropriate in this case, and we conclude that the Board was not clearly wrong in finding that Mr. Laxton established that he is entitled to a 12% PPD award. The factfinder in a workers' compensation case is thus vested with the statutory responsibility to weigh the conflicting medical opinions in terms of "relevance, credibility, materiality and reliability

4

... in the context of the issue presented." W. Va. Code § 23-4-1g(a). West Virginia Code § 23-4-1g(a) provides a default rule that states when a factfinder is presented with evidence of equal evidentiary weight, she must adopt "the resolution that is most consistent with the claimant's position[.]" When confronted with conflicting medical opinions, the factfinder must consider the entire record, clarify inconsistencies, and adequately explain her reasons for choosing one medical opinion over the other." *Gwinn v. JP Morgan Chase,* No. 23-172, 2024 WL 4767011, at *4 (W. Va. Nov. 13, 2024) (memorandum decision). We conclude that the Board was not clearly wrong in finding that Drs. Guberman and Soulsby were equally persuasive and, thus, adopting Dr. Guberman's findings as required by West Virginia Code § 23-4-1g.

As the SCAWV has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order granting Mr. Laxton an 8% PPD award and instead granting him an additional 4% PPD, for a total of a 12% PPD award.

We find no merit in Furniture's argument that Dr. Guberman "arbitrarily" determined the amount of impairment appropriate to apportion for preexisting conditions. We note, as did the Board, that Dr. Guberman used the Rule 20 Spinal Tables to support his apportionment findings, as did Dr. Soulsby. Moreover, Dr. Guberman's medical evaluation complies with Syllabus Point 3 of *Birch*. Dr. Guberman found that Mr. Laxton has an 18% WPI under the Range of Motion Model of the *Guides*. He then placed Mr. Laxton in Lumbar Category III of Table 85-20-C, which has an impairment range of 10% to 13% WPI. Like Dr. Soulsby, he stated that Mr. Laxton has a 13% lumbar impairment pursuant to Rule 20. Only after placing Mr. Laxton in Category III did Dr. Guberman apportion for pre-existing impairment. He noted that Mr. Laxton had no prior lumbar symptoms and apportioned 1% WPI. Contrary to Furniture's arguments, Dr. Soulsby offered very general reasoning for his method of apportionment, while Dr. Guberman explained his reasoning in greater detail.

Accordingly, we affirm the Board's December 19, 2024, order.

Affirmed.

**ISSUED:**  August 6, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White